UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X     **CV13**     **6627**

GINA M. FANELLI,

**COMPLAINT**

                                    Plaintiff,

                                                        **SPATT, J.**

           -against-                                    Docket No.:

THE STATE OF NEW YORK, JAMES GILMORE,
PETER A. SCULLY, and JOHN and JANE DOE
(said names being fictitious, the persons intended
being those who aided and abetted the unlawful
conduct of the named Defendants),

                                                        **JURY TRIAL**
                                                        **REQUESTED**
                                    Defendants.
-----------------------------------------------------------------X

   Plaintiff, **GINA M. FANELLI** ("Plaintiff"), by her attorneys,

**MADUEGBUNA COOPER LLP**, for her complaint herein alleges:

## I.   THE NATURE OF THIS ACTION

   1.   This is an action for injunctive relief, declaratory judgment and money

damages to remedy discrimination on the basis sex in the terms, conditions and

privileges of employment under Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"), and the New York Human Rights

Law as contained in New York State Executive Law, § 296 *et seq.* ("NYHRL").

   2.   This action is being brought to vindicate the human and civil rights of

Plaintiff. Plaintiff contends that the terms, conditions and privileges of her employment

relationship with the State of New York were adversely affected, in part, because of her sex and in retaliation for her prior complaints of sex discrimination.

## II. JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

4.     This Court has supplemental jurisdiction over the state causes of action pleaded herein.

## III. PROCEDURAL REQUIREMENTS

5.     Charges of discrimination have been filed with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to the provisions of Title VII, 42 U.S.C. §§ 2000e *et seq.*

6.     The EEOC issued a Right to Sue Notice to Plaintiff on August 29, 2013, which Plaintiff received on September 4, 2013.

7.     This lawsuit was commenced within 90 days of Plaintiff's receipt of the Right to Sue Notice.

## IV. PARTIES

8.     Plaintiff is a white female.

9.     At all relevant times, Plaintiff is and was a resident of the State of New York.

10. Plaintiff holds an undergraduate degree from the University of Tampa in Marine Science/Biology and was enrolled as a Graduate Student at the State University of New York, located at Stony Brook, New York ("SUNY Stony Brook").

11. Plaintiff has been an employee of Defendant, The State of New York (the "STATE"), for over eight years.

12. Plaintiff currently holds the title of "Biologist 1 (Marine)" with the Shellfish Growing Area Classification Unit of the Bureau of Marine Resources ("BMR") of the New York State Department of Environmental Conservation ("DEC").

13. At all relevant times, Defendant STATE was and still is a political entity duly organized and existing under and by virtue of the laws of the State of New York and the United States of America.

14. At all relevant times, the STATE, its agents, servants, and employees, operated, maintained and controlled DEC, including all the employees thereof.

15. DEC is an agency or department of the STATE, duly existing by reason of, and pursuant to, the laws of the State of New York.

16. At all relevant times, Defendant JAMES GILMORE ("GILMORE"), was employed by the STATE in the position of Chief, Bureau of Marine Resources with DEC.

17.     Defendant GILMORE, a white male, is sued here both in his personal and official capacities.

18.     At all relevant times, Defendant PETER A. SCULLY ("SCULLY") was employed by the STATE in the position of Regional Director for Region 1 Office of DEC.

19.     Defendant SCULLY, a white male, is sued here both in his personal and official capacities.

20.     At all relevant times, Defendants were acting under color of the statutes, ordinances, regulations, customs and usages of the United States, and the State of New York, and under the authority of their respective positions or offices.

21.     At all relevant times, Defendant STATE and DEC maintained a pattern and practice of unlawful discrimination against employees on the basis of sex, race, color, disability and national origin, and for retaliating against employees for complaining about unlawful discrimination.

## V.     **FACTS COMMON TO ALL CAUSES OF ACTION**

*Plaintiff's Employment with the State*

22.     Plaintiff has been in public service for more than eight years.

23.     At all relevant times, Plaintiff performed her duties in a satisfactory manner. No disciplinary action has ever been taken against Plaintiff, nor were any

complaints ever leveled against her with regard to the manner in which she performed her duties.

24.     On April 24, 2005, Plaintiff was hired off the Civil Service List as a "Marine Biologist 1 Trainee" by Defendant STATE, and assigned to Region 1 Office of DEC under the overall leadership of Defendant SCULLY.

25.     Upon successful completion of a 24-month mandatory traineeship for the position of "Marine Biologist 1 Trainee," on April 26, 2006, Plaintiff became a "Marine Biologist Trainee 2," and on April 22, 2007 assumed the title of "Biologist 1 (Marine)."

26.     Between April 24, 2005 and April 2009, Plaintiff worked as a "Biologist 1 (Marine)" in the Marine Habitat Protection Section of the Region 1 Office of DEC, located in Stony Brook, New York, and during the same period, served as the Regional Bond Act Project Manager for the section.

*SCULLY's Discriminatory Animus and Actions*

27.     At all relevant times, Defendant SCULLY harbored discriminatory *animus* towards Plaintiff on account of her sex.

28.     At different times between April 24, 2005 and April 2009, Defendant SCULLY has, on account of Plaintiff's sex, unjustifiably described Plaintiff as adversarial, confrontational, combative, and not a team player.

29.     On or about April 25 2009, Plaintiff was, on the instructions of Defendant SCULLY, transferred from Region 1 Office to the Shellfish Growing Area Classification Unit of BMR.

30.     The transfer of Plaintiff by Defendant SCULLY was contrary to the transfer policies and procedures of the STATE and DEC, in that Defendant SCULLY failed to give Plaintiff an opportunity to challenge the transfer.

*GILMORE's Discriminatory Practices and Actions*

31.     Upon Plaintiff's transfer by Defendant SCULLY to the Shellfish Growing Area Classification Unit of BMR, Plaintiff came under the supervision of Defendant GILMORE.

32.     At all relevant times, Defendant GILMORE had a history of discriminating against employees within BMR on the basis of sex, age, race, color and national origin, and for retaliating against employees for complaining about such unlawful discrimination.

*Failure to Promote Plaintiff to the Position of "Biologist 2 (Marine)"*

33.     On December 17, 2010, based on her score on the Civil Service examination, Plaintiff applied to be promoted to the position of "Biologist 2 (Marine)".

34.     Upon information and belief, at all relevant times, DEC maintained a policy whereby a member of a protected class, such as a woman, would be hired for a

position she applied for if, based on her score on the Civil Service examination, she ranks among the top three candidates for the position.

35.    On December 28, 2010, Plaintiff was interviewed for the position of "Biologist 2 (Marine)." However, Plaintiff was passed over by Defendant GILMORE, and the position was given to JOHN MANISCALCO, JR. ("MANISCALCO"), a male employee, who was a former student of GILMORE at SUNY Stony Brook, School of Marine and Atmospheric Sciences ("SOMAS"), where GILMORE is also employed as an adjunct Professor.

36.    Upon information and belief, Defendant GILMORE passed Plaintiff over for promotion to the position of "Biologist 2 (Marine)" in favor of less qualified and less experienced MANISCALCO, based on sex and other unlawful considerations.

37.    In order to select MANISCALCO for promotion to the position of "Biologist 2 (Marine)," Defendant GILMORE passed over three more qualified and experienced women, including Plaintiff.

38.    More specifically, MANISCALCO had less tenure at DEC than Plaintiff. MANISCALCO was hired as a Provisional "Biologist 1 (Marine)" more than one year after Plaintiff had passed the Civil Service exam and begun training as a "Biologist 1 (Marine)." In contrast, at the time of Plaintiff's hire, MANISCALCO had not taken the Civil Service exam for the "Biologist 1 (Marine)" title, and did not

become a permanent employee of DEC holding the title "Biologist 1 (Marine)" until on or about October 27, 2008, more than three and half years after Plaintiff had herself become a permanent employee working in that title and area.

39.     Due to Plaintiff's seniority by more than three and half years in the title of Marine Biologist, according the Civil Service rules of Defendant STATE, she is more experienced than MANISCALCO as a "Biologist 1 (Marine)," and as a result, more qualified than MANISCALCO for promotion to the position of "Biologist 1 (Marine)."

40.     In addition to her seniority and experience, to the knowledge of Defendant GILMORE at the time of selection of MANISCALCO for the "Biologist 2 (Marine)" position, Plaintiff was an avid angler and saltwater fisherman who regularly attended Marine Resource Advisory Council meetings in order to keep abreast of marine and fishery issues, including DEC regulations and policies.

41.     Despite her seniority, experience and superior qualifications, Plaintiff was passed over by Defendant GILMORE for promotion to the position of "Biologist 2 (Marine)" in favor of a male candidate with less seniority and experience than Plaintiff.

*Unlawful Failure to Promote Plaintiff to the "Biologist 2 (Ecology)" Position*

42.    On January 20, 2011, based on her qualifications and experience, Plaintiff applied to be promoted to the position of "Biologist 2 (Ecology)" within Region I Office of DEC, located in Stony Brook, New York, where Plaintiff previously worked before she was transferred to BMR.

43.    Plaintiff's score on the promotion roster for the position of "Biologist 2 (Ecology)" was a 75, making her the second highest scoring candidate behind a male, MATTHEW RICHARDS ("RICHARDS"), with a score of 80, and tied with another male employee, JASON SMITH ("SMITH"), with a score of 75.

44.    Plaintiff was one of four candidates considered for the position of "Biologist 2 (Ecology)" and the only female candidate.

45.    Upon information and belief, the male to female ratio for the "Biologist 2 (Ecology)" position was 8:2.

46.    As previously stated, according to the applicable DEC policy on hiring and promoting members of a protected class, such as women, if a protected class member is among the top three candidates for an open position, the member of the protected class should receive the position.

47.    Despite the above facts, in violation of applicable DEC policy and in a further act of discrimination against Plaintiff, Defendant SCULLY awarded the

"Biologist 2 (Ecology)" position to ANDREW WALKER ("WALKER"), a male, who not only had the lowest score of the four candidates, but is also less experienced than Plaintiff.

48.    Upon information and belief, WALKER scored a 70 on the promotional roster used for the January 2011 "Biologist 2 (Ecology)" position.

49.    Upon information and belief, RICHARDS and SMITH, the other two candidates for the "Biologist 2 (Ecology)" position, were dissuaded from accepting, or otherwise pressured to reject, the position by Defendant SCULLY and others acting on his behalf.

50.    Moreover, at all relevant times, WALKER had less seniority than Plaintiff, having been hired as a "Biologist 1 (Marine)" on or about June 30, 2005.

51.    Furthermore, WALKER did not have the same level of familiarity with the Stony Brook work location for the "Biologist 2 (Ecology)" position as Plaintiff. Whereas WALKER worked his entire career at DEC's office located in Long Island City, New York, Plaintiff, for almost six years prior to the selection process for the "Biologist 2 (Ecology)" position, worked entirely out of DEC offices, including at the Stony Brook office, while covering Nassau and Suffolk Counties, the same counties to be covered under the "Biologist 2 (Ecology)" position.

-10-

*Retaliation Against Plaintiff for her Complaint to the EEOC*

52. On August 22, 2011, Plaintiff filed a complaint with the EEOC, alleging discrimination on the basis of sex regarding the discriminatory conduct of Defendants GILMORE and SCULLY.

53. Defendants knew, and could reasonably be expected to know, that Plaintiff had filed the sex discrimination complaint with the EEOC as aforesaid.

54. In retaliation for Plaintiff's complaints, Plaintiff was subjected to differential treatment in the terms, conditions and privileges of her employment relationship with Defendants.

### a. **Retaliatory Investigation and Attempts to Discipline Plaintiff**

55. On or around September 13, 2011, Defendant GILMORE singled out Plaintiff and her live-in partner, CHRIS SPIES ("SPIES"), also an employee of DEC, for investigation and discipline in connection with their alleged participation in an online discussion board on topics relating to the state of fishing and marine resources in the State of New York.

56. As part of Defendant GILMORE's retaliatory investigation and discipline, GLIMORE sought to besmirch Plaintiff's employment record by requesting to see Plaintiff's previous performance evaluations and directing Plaintiff's supervisor,

KAREN GRAULICH ("GRAULICH"), to reflect GLIMORE's unfounded accusations in her upcoming annual performance evaluation.

57. In furtherance of the retaliatory actions against Plaintiff, on October 4, 2011, Defendant GILMORE and others acting on his behalf directed Plaintiff to appear for interrogation in connection with Plaintiff's alleged participation in an online discussion board by making posts.

58. As a result of the retaliatory actions of Defendant GILMORE and others acting on his behalf, on or about April 10, 2012, Plaintiff was subjected to interrogation with a view to discipline and bring her up on charges and with a view to terminate her employment with the STATE.

59. As the interrogation did not provide evidence that could be used to impose discipline upon Plaintiff, on May 15, 2012, Plaintiff was advised that no disciplinary action would be taken against her and SPIES.

60. There was no credible basis for the decision of Defendant GILMORE to have Plaintiff interrogated.

61. Defendant GLIMORE's instigation of Plaintiff's disciplinary interrogation was motivated by considerations of sex and in retaliation for Plaintiff's reporting of discrimination and perceived violations of law.

**b.**     **Retaliatory Denial of Plaintiff's Request for Alternative Work Schedule**

62.    On January 24, 2012, Plaintiff voluntarily submitted a Request for Alternative Work Schedule to the Leave Accrual Tracking System (LATS) office in Albany, New York. This request was in order to accommodate Plaintiff's field work schedule as part of the Compressed Pay Period (CPP), whereby Plaintiff received every other Monday as a pass day and worked extra hours from Tuesday through Friday.

63.    On March 29, 2012, a few days before the fiscal year was to begin, Plaintiff was advised by her supervisor, GRAULICH, that the LATS office had not yet received her application. When Plaintiff's supervisor, GRAULICH, therefore inquired about the status of Plaintiff's application, Defendant GILMORE initially claimed that the application had been sent to Albany with all other similar requests, only to state a day later that a DEC Administrative Assistant had mistakenly, and without GILMORE'S knowledge, pulled Plaintiff's application from what was sent to Albany. In truth, however, as of March 29, 2012, GILMORE had wrongfully and without justification denied Plaintiff's application.

64.    As a result of Defendant GILMORE's unjustified denial of Plaintiff's application for an Alternative Work Schedule, on April 4, 2012, pursuant to the

terms and conditions of the collective bargaining agreement between the STATE and Plaintiff's union, Plaintiff filed a grievance challenging the denial of her application, contending that she was penalized without due process.

### c.   Retaliation Against Plaintiff for Filing a Union Grievance

65.    Rather than follow the appropriate Step One procedure of holding a hearing with Plaintiff and a union representative present, Defendant GILMORE unilaterally issued a decision denying Plaintiff's grievance on the false grounds that denial of Plaintiff's application for CPP was not subject to the grievance procedures of the collective bargaining agreement.

66.    On May 3, 2012, Plaintiff appealed Defendant GILMORE's improper decision to the DEC's Office of Employee Relations. After a hearing, the office determined, inter alia, that GILMORE did in fact fail to follow Step One protocol, but that it was unable to determine if Plaintiff's due process rights were in fact violated.

67.    In or about July 2012, Plaintiff further appealed the decision of the DEC Office of Employee Relations to the Governor's Office of Employee Relations. However, the appeal was rendered moot, as Plaintiff had by that time been reinstated to the CPP program for the fiscal year.

68.     The   unjustified   denial   of   Plaintiff's   grievance   by   Defendant GILMORE caused Plaintiff harm and altered the terms and conditions of Plaintiff's employment.

69.     The   conduct   of   Defendant   GILMORE   in   summarily   denying Plaintiff's grievance at Step One was motivated by considerations of sex and in retaliation for Plaintiff's complaints to the EEOC.

### d.      Retaliatory Barring of Plaintiff from Attending Public Meetings

70.     As part of her interest in local marine issues and because Marine Resources Advisory Council ("MRAC") decisions often affect her on a personal level, Plaintiff regularly attends public meetings of MRAC.

71.     MRAC was established by law in 1987 to advise DEC on marine resources issues, such as commercial and recreational fishing, proposed regulations and the protection and utilization of New York's valuable marine resources.

72.     MRAC meets a number of times per year, usually at Plaintiff's office at BMR headquarters in East Setauket, Long Island. The meetings are open to the public, and members of the public, including employees of DEC, such as Plaintiff and others, may attend and address the Advisory Council on marine resources issues.

73. At all relevant times, prior to Plaintiff's filing her complaint with the EEOC and her grievance challenging denial of her Request for Alternative Work Schedule, employees of DEC in BMR were permitted and never prohibited from attending MRAC meetings, provided they did not attend such meetings during work time.

74. On September 18, 2012, less than three months after Plaintiff's grievance challenging denial of her Request for Alternative Work Schedule, Plaintiff was advised by her supervisor, GRAULICH, that Defendant GILMORE had expressed displeasure at Plaintiff's presence at the past several MRAC meetings, and that she had been directed by GILMORE to no longer approve Plaintiff's requests for time off if such requests coincided with MRAC meetings.

75. Prior to September 18, 2012, Plaintiff had always applied for and been allowed to take time away from work to attend MRAC meetings. Although Plaintiff routinely sought leave to attend MRAC meetings, many other DEC employees at BMR were not required by Defendant Gilmore and others to use their leave time when they wanted to attend MRAC meetings.

76. In response to the retaliatory decision by Defendant Gilmore, by a letter dated September 18, 2012, Plaintiff complained to VINCENT PALMER ("PALMER"), DEC Special Assistant to the Commissioner, that she was being

"harassed and specifically targeted by Jim Gilmore." However, nothing was done by PALMER to address Plaintiff's complaint.

77. Rather, following Plaintiff's complaint, on September 19, 2012, Plaintiff was advised by her supervisor, GRAULICH, that she had a right to attend public meetings, and that she was in fact being discriminated against by Defendant GILMORE.

78. The conclusion of Plaintiff's supervisor, GRAULICH, that she was being discriminated in connection with attendance at the MRAC meeting is supported by the fact that at the MRAC meeting held on September 18, 2012, half of the attendees were employees of DEC working in BMR.

### e. Harassment of Plaintiff for Attending Public Meetings

79. On or about January 16, 2013, Plaintiff attended MRAC meeting on her own time. When Plaintiff stepped out of the meeting to get coffee, she was approached by Shellfisheries Section Head DEBRA BARNES ("BARNES"), whom GILMORE had unlawfully and discriminatorily promoted to the Section Head position over an older employee, and told Plaintiff that Defendant GILMORE had not allowed Plaintiff to attend the meeting. Plaintiff responded that she was attending on her own time as a regular member of the public and had a right to do so.

-17-

80.     Following the MRAC meeting on January 16, 2013, Defendant GILMORE discussed Plaintiff's attendance at MRAC meetings with BARNES and Plaintiff's supervisor, GRAULICH, and accused Plaintiff of being "insubordinate."

81.     Upon information and belief, at the January 16 meeting, Defendant GILMORE further sought to besmirch Plaintiff's employment record by accusing her of being involved in an altercation with another employee. This accusation was false, and Defendant GILMORE in fact admitted that Plaintiff was not involved in any altercation at a subsequent meeting on January 23, 2013.

82.     On January 22, 2013, at another meeting in connection with her attendance at the January 16 MRAC meeting, Plaintiff was informed by her supervisor, GRAULICH, in the presence of Plaintiff's union shop steward, that Defendant GILMORE would further tarnish Plaintiff's employment record by having BARNES put a disciplinary letter in Plaintiff's personnel file if she continued to attend MRAC meetings.

83.     At the January 22, 2013, meeting Plaintiff was further informed that Defendant GILMORE had made it clear that if Plaintiff was interested in being promoted, continuing to attend MRAC meetings – even on her own time – would be considered confrontational and would not help.

**f.**  **Retaliatory and Discriminatory Treatment of Plaintiff**

84.     Upon information and belief, no other employee of BMR under the supervision of Defendant GILMORE has been subjected to the sort of maltreatment, harassment, discipline and threats of discipline that Plaintiff endured at the hands of Defendant GLIMORE.

85.     At all relevant times, Defendants' failure to promote Plaintiff on two separate occasions was carried out without a fair, equitable or proper programmatic and functional analysis.

86.     In furtherance of their discriminatory objectives, Defendants purposefully circumvented established manuals, guidelines, policies and procedures.

87.     Defendants showed preferential treatment by failing to promote three different women, including Plaintiff, to the "Biologist 2 (Marine)" position, and failing to promote Plaintiff to the "Biologist 2 (Ecology)" position.

88.     Plaintiff repeatedly objected and complained about Defendants' unlawful decisions and failure to abide by proper anti-discrimination policies and procedures, to no avail.

89.     In retaliation for Plaintiff's complaints of sex discrimination and perceived violations of law by Defendants, Plaintiff was subjected to differential

-19-

treatment in the terms, conditions and privileges of her employment relationship with Defendants.

90.    In addition, and since January 2011, Defendants have subjected Plaintiff to differential terms and conditions of employment because of her sex. These differential terms and conditions of employment include, but are not limited to:

    (a)    failing to promote Plaintiff to positions for which she was suitably and well qualified, in violation of DEC policy;

    (b)    incessant harassment not experienced by similarly situated employees, and excessive criticism not otherwise leveled against employees who are male or who have not complained of discrimination;

    (c)    retaliation for Plaintiff's filing of a grievance and complaint with the EEOC; and

    (d)    retaliation for Plaintiff's complaints of violations and perceived violations of law.

91.    The discriminatory and retaliatory conduct complained of herein includes, but is not limited to, the following:

    (a)    launching unfounded investigations into Plaintiff's alleged

participation in an online discussion board on topics relating the state of fishing and marine resources in the State of New York;

(b)     unjustifiable and retaliatory denial of Plaintiff's Request for Alternative Work Schedule;

(c)     barring Plaintiff from attending MRAC meetings; and

(d)     threatening Plaintiff with discipline for attending MRAC meetings on her own time.

92.     All the foregoing actions were taken by the Defendants in order to deprive Plaintiff of employment and other contractual opportunities because of sex.

### *The State and DEC Maintains a Pattern and Practice of Discrimination*

93.     At all relevant times, the DEC, and particularly the senior management at Region 1 Office and BMR, maintain a pattern and practice of unlawful discrimination on the basis of sex, race, color, ancestry and national origin in hiring, retention, promotion, and compensation of employees, and indeed have been found by a jury in this court to have discriminated and retaliated against employees for complaining about discriminatory conduct or for perceived violations of law.

94.     The unlawful treatment of Plaintiff is not an isolated event. Defendant STATE is aware (from lawsuits, notices of claims, and complaints filed against it in

this court and elsewhere) that many senior officials, including the Defendants, are insufficiently trained in the area of equal employment opportunity, including discrimination on the basis of sex, race, color, ancestry and national origin, and retaliating against employees for complaining about discrimination or other unlawful activity.

95.    Defendant STATE is further aware that such improper training and failure to train has often resulted in deprivation of civil rights, including unlawful discrimination and retaliation at DEC. The notice has been provided from internal EEO complaints, lawsuits filed in this court, settlements and verdicts reached in this court, and audits from the STATE's own agencies.

96.    Despite such notice over a long period of time from different sources, Defendant STATE has failed to take any or appropriate corrective action. This deliberate indifference to training managers at DEC and protecting against future discriminatory conduct against employees has directly caused the individual defendants in the present case to violate Plaintiff's civil and human rights, as she worked in an environment where managers were not properly trained in civil rights and, like the other cases that provided notice, they failed to promote Plaintiff, retaliated against Plaintiff and denied her contractual rights, which are the same behaviors that

had led the STATE to be given notice and/or found liable for civil rights violations in the past.

97. Moreover, upon information and belief, Defendant STATE was aware, prior to the acts the subject of this lawsuit, that the individual defendants lacked the objectivity, temperament, discretion and disposition to be employed in senior management positions and making personnel decisions without regard to sex, race, color, ancestry and national origin. Despite such notice, Defendant STATE has retained these individuals and failed to adequately train or supervise them, and was deliberately indifferent to their unlawful conduct toward protected class employees in terms of hiring, promotion, treatment and retention.

98. At all relevant times, the STATE is vicariously liable for the actions of the individual defendants.

### The Conduct of Defendants Justify Injunctive Relief and Punitive Damages

99. Defendants' actions were unlawful and in violation of Plaintiff's rights under Federal laws, such as Title VII, and State laws, such as the New York State Human Rights Law.

100. Plaintiff has complained, to no avail, about the unlawful conduct of the Defendants towards her.

101. Because of Plaintiff's protests of violations of her human rights, Plaintiff has been subjected to further discrimination and/or retaliation.

102. As a proximate result of Defendants' discriminatory conduct towards Plaintiff, Plaintiff has suffered and continues to suffer significant monetary loss and damages, including the loss of past and future earnings, and other employment benefits.

103. As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer from severe emotional distress, lasting embarrassment, humiliation and anguish, as well as other incidental and consequential damages and expenses.

104. Defendants' conduct is outrageous and malicious, was intended to injure Plaintiff, and was carried out with reckless indifference to Plaintiff's protected civil rights, thereby entitling her to punitive damages.

105. Plaintiff has no complete, plain, clear or adequate remedy at law.

106. The acts of the Defendants against Plaintiff continue. Defendants must be restrained from further retaliation and discrimination against Plaintiff and directed to cease and desist from their unlawful acts against Plaintiff.

107. Plaintiff believes that the Defendants' unlawful acts against her will continue until this Court, by injunction and/or its judgment, compels otherwise.

## AS AND FOR A FIRST COUNT
### (Pursuant to Title VII)

108. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

109. Defendants subjected Plaintiff to differential terms and conditions of employment because of her sex.

110. These differential terms and conditions of employment include, but are not limited to: failure to promote Plaintiff to positions for which she was suitably and well qualified and in violation of DEC policy; incessant harassment not experienced by similarly situated male employees; excessive criticism not otherwise leveled against employees who are not female; and retaliation for her complaints of unlawful discrimination.

111. All the foregoing actions were taken by the Defendants in order to deprive Plaintiff of employment and other contractual opportunities on account of her sex.

112. Because of the willful and deliberate actions of the Defendants, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity in violation of Title VII.

-25-

113.   By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

## AS AND FOR A SECOND COUNT
### (Retaliation Pursuant to Title VII)

114.   Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

115.   Defendants' aforesaid conduct was in retaliation for Plaintiff's complaints of discrimination on the basis of sex and violated Plaintiff's rights under Title VII.

116.   By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

## AS AND FOR A THIRD COUNT
### (Sex Discrimination in Violation of NYHRL)

117.   Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

118.   By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of her sex, Defendants violated New York State Human Rights Law.

-26-

119.   By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

**AS AND FOR A FOURTH COUNT**
**(Retaliation in Violation of NYHRL)**

120.   Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

121.   All the various actions taken by the Defendants against Plaintiff, subsequent to when she complained of discrimination, constitute unlawful retaliation in violation of New York State Human Rights Law.

122.   By reason of the foregoing, plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

**PUNITIVE DAMAGES**

123.   By reason of the wanton, unrepentant, reckless and egregious conduct of Defendants herein-above alleged, Plaintiff claims punitive damages.

**WHEREFORE,** Plaintiff prays that this Court grant her judgment containing the following relief:

a.      Impanel a jury to hear Plaintiff's claims;

b.   Grant Plaintiff preliminary and permanent injunctions, prohibiting the Defendants, their agents, successors, employees and those acting in concert with them and at their direction from engaging in any of the practices set forth above and any other practice shown to be unlawful or retaliatory or discriminatory on the basis of sex with respect to compensation, terms, conditions and privileges of employment or from continuing or maintaining a policy, practice, custom or usage of denying, abridging, withholding, conditioning, limiting or otherwise interfering with the rights of Plaintiff to enjoy equal employment opportunities secured by law;

c.   Establish an imposed oversight and monitoring of the activities of Defendants to prevent future acts of retaliation;

d.   Establish a mechanism for the enforcement of the injunctions by requiring the Defendants to present to the Court within 30 days of the issuance of the injunction, a plan showing precisely and in detail how they will comply with the Court's order and that they cease and desist from policies, practices, customs and usages of discrimination against plaintiff and other persons similarly situated;

e.  An award of damages in an amount to be determined upon the trial of this matter to compensate plaintiff for her monetary loss and damages, including Plaintiff's loss of past and future earnings, bonuses, compensation, and other employment benefits.

f.  An award of damages to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury for each cause of action;

g.  An award of damages in an amount to be determined upon the trial of this matter to compensate plaintiff for violations of her rights under the New York State Human Rights Law and Title VII;

h.  Directing the assignment of Plaintiff to a position within DEC where she could perform the functions of a "Biologist 2 (Marine)" or "Biologist 2 (Ecology)", at a salary commensurate with said position;

i.  An award of punitive damages to be determined at the time of trial for each cause of action;

j.  An award of reasonable attorneys' fees and costs related to plaintiff's claims under the Title VII and New York State Human Rights Law, and

k.  Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
November 27, 2013

Respectfully Submitted,

SAMUEL O.MADUEGBUNA, ESQ.
**MADUEGBUNA COOPER LLP**
Attorneys for Plaintiff
GINA M. FANELLI
110 Wall Street, 11TH Floor
New York, New York 10005
(212) 232-0155

TO: Defendants

THE STATE OF NEW YORK
c/o New York State Attorney General's Office
200 Old Country Road, Suite 240
Mineola, N.Y. 11501-4239

JAMES GILMORE
New York State Department of Environmental Conservation
Bureau of Marine Resources
205 North Belle Mead Road, Suite 1
East Setauket, New York 11733

PETER A. SCULLY
New York State Department of Environmental Conservation
Region 1 Office
50 Circle Road
Stony Brook, New York 11790

*UNITED STATES DISTRICT COURT*
*EASTERN DISTRICT OF NEW YORK*                           *Docket No.:*

_____

*GINA M. FANELLI,*

*Plaintiff,*

*-against-*


*THE STATE OF NEW YORK, JAMES GILMORE, PETER A. SCULLY, and JOHN and JANE*
*DOE (said names being fictitious, the persons intended being those who aided and abetted the*
*unlawful conduct of the named Defendants),*

*Defendants.*

_____


*COMPLAINT AND JURY DEMAND*

_____

*Signature (Rule 130-1.1-a)*

_____

*Print name beneath   SAMUEL O. MADUEGBUNA, ESQ.*

_____


*Yours, etc.*

*MADUEGBUNA COOPER LLP*
*Attorneys for Plaintiff*
*110 Wall Street, 11th Floor*
*New York, New York 10005*
*(212) 232- 0155*

*To: All Counsel of Record*
_____
*Service of the within is hereby admitted on*

_____

*Attorneys for*