UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
NEW YORK
------------------------------------------------------
GINA M. FANELLI,

                              Plaintiff,

                                                        **MEMORANDUM AND ORDER**
        -against-                                       13-CV-6627 (DRH)(AKT)

THE STATE OF NEW YORK, JAMES
GILMORE, PETER A. SCULLY, and JOHN
and JANE DOE (said names being fictitious, the
persons intended being those who aided and
abetted the unlawful conduct of the named
Defendants),

                              Defendants.
---------------------------------------------------------X
**A P P E A R A N C E S :**

**For the Plaintiff:**
**MADUEGBUNA, COOPER LLP**
30 Wall Street, 8th Floor
New York, NY 10005
By:   Samuel O. Maduegbuna, Esq.
      Kyle Donald Winnick, Esq.
      William W. Cowles, II, Esq.

**For the Defendants:**
**NYS Attorney General's Office**
200 Old Country Road, Suite 460
Mineola, NY 11501
By:   Toni E. Logue, Esq.

**HURLEY, Senior District Judge:**

        Gina M. Fanelli ("Fanelli" or "plaintiff") commenced this action against defendants

the State of New York, James Gilmore ("Gilmore"), Peter A. Scully ("Scully") (collectively,

"defendants") asserting claims of gender-based discrimination and retaliatory employment

practices in violation of 42 U.S.C. § 2000(e) (Title VII) and New York Human Rights Law

1

("NYHRL"), Executive Law § 296. In a decision dated August 18, 2014, the Honorable

Arthur D. Spatt dismissed some of plaintiff's claims such that only Title VII claims against

the State of New York based on allegations of discriminatory acts committed prior to

October 26, 2010 and NYHRL claims against Gilmore in his official capacity remain.

*Fanelli v. New York*, 51 F. Supp. 3d 219 (E.D.N.Y. 2014). Subsequently, the case was

transferred to this Court.

Presently before the Court is defendants' motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56 ("Rule 56") seeking dismissal of the remaining claims.

For the reasons set forth below, the defendants' motion is granted.

### BACKGROUND

The following facts, drawn from the parties' Local Rule 56.1 statements, the pleadings,

and prior decisions in this case, are undisputed unless otherwise noted.

*Plaintiff's Employment at DEC*

Plaintiff, a woman, began working at the New York State Department of Environmental

Conservation ("DEC") in April of 2005 when she was hired as a Marine Biologist I Trainee at

DEC's Region 1 Office. Scully was the Regional Director of Region 1 during all times relevant

to this motion. Between 2005 and early 2009, plaintiff worked in the Tidal Wetlands Regulatory

Program ("TW Program"). During that time, she worked under the direction of Karen Graulich

("Graulich"). On April 22, 2007, plaintiff was given the title of Biologist 1 (Marine). In October

of 2007, defendant Gilmore was appointed as Chief of the Bureau of Marine Resources ("BMR")

located in East Setauket, New York and has held that position at all times relevant to this motion.

On January 15, 2009, executive staff including Scully met with staff of the Region 1 TW

Program, including Graulich and Fanelli, to discuss implementation of improvements to the TW

Program.  According to defendants, plaintiff's conduct during the meeting "made it clear that . . . she was resistant to the changes being proposed, by repeatedly shaking her head and stating that [the] program staff was 'being punished for doing a good job.' " (Defs.' R. 56.1 Stmt. ¶ 20.) Plaintiff, however, disputes that she behaved in such a way.

*The Biologist 2 (Marine) Position*

Plaintiff applied for the position of Biologist 2 (Marine) in or about December 2010.  This position was responsible for supervising the employees of the unit and directing the work of the unit, and it involved participation in the tactical committees of the Atlantic State Marine Fisheries Commissions.  Both plaintiff and another candidate, John Maniscalco ("Maniscalco"), scored 75 "on the eligible list."[1]  (Defs.' R. 56.1 Stmt. ¶ 30.)  However, Maniscalco had a Master's of Science, while plaintiff did not.  Six individuals, including plaintiff, were interviewed by Steven Heins ("Heins"), Biologist 3 (Marine), to whom the person occupying the position would directly report at BMR, and/or to Gilmore.  Heins decided which candidates would be interviewed through a process called "canvassing," which means looking at the eligible list and selecting the top scoring candidates.  During the interview, the interviewers used a point matrix, awarding points to candidates for various categories.  According to Gilmore, Maniscalco scored higher than any other candidate on the point matrix.  Accordingly, Maniscalco was recommended for the position to Human Resources.

At all times relevant to this motion, DEC policy required that when a person of a protected class was interviewed for a position and not selected, a written justification letter must be sent to Juan Abadia ("Abadia"), DEC's Affirmative Action Officer, for approval.  On December 13,

_____

[1] "Where a candidate scores on the eligible list is used for selecting which candidates to interview."  (Defs.' R. 56.1 Stmt. ¶ 31.)

2010 Gilmore sent such a justification to Abadia, and on December 17, 2010, Abadia approved the hiring of Maniscalco.

*The Biologist 2 (Ecology) Position*

Shortly thereafter, plaintiff applied for the Biologist 2 (Ecology) position. "In reviewing the eligible list for this managerial position, individuals who scored a 70 and above were canvassed for interviews." (Defs.' R. 56.1 Stmt. ¶ 43.) Plaintiff had a score of 75 and Andrew Walker ("Walker") had a score of 70 on the eligible list. However, Walker had a Master's of Science, which plaintiff lacked.

On or about December 28, 2010, five individuals, including plaintiff, were interviewed by Robert Marsh, Biologist 3 (Ecology), to whom the person occupying the position would report at Region 1, and JR Jacobson, Biologist 3 (Ecology), who was from the DEC's Central Office in Albany. Ultimately, Andrew Walker ("Walker") was recommended for the position. Since plaintiff was a protected class candidate who had not been selected for the position, a justification letter needed to be sent to Abadia for approval. In his justification memorandum dated December 30, 2010, Marsh reported that Walker was found by interviewers to have a stronger educational background in marine sciences, more relevant regulatory and marine habitat experience and more experience with supervision of regulatory staff. However, the justification letter did not specifically address why the interviewers believed that plaintiff herself could not perform the duties of the position. Subsequently, Abadia rejected the justification. As a result, Scully, head of DEC's Region 1 office, submitted a supplemental justification that underscored plaintiff's "past resistance and expressed opposition to ongoing efforts to implement reforms to address acknowledged and longstanding dysfunction in the Tidal Wetlands regulatory program, which would become the direct responsibility of the successful candidate for the position." (Defs.' R.

56.1 Stmt. ¶ 53.)  Abadia then approved Walker's hiring.

*Investigation of Plaintiff's Internet Use*

In July 2011, Environmental Conservation Captain Dorothy Thumm ("Thumm") informed Gilmore verbally that another employee, Christopher Spies from Region 1 Pesticides, had been posting inappropriate internet blogs on *Noreast.com*, disseminating both confidential DEC information and voicing disagreements with BMR fisheries management decisions.  Thumm contacted Mr. Spies' supervisor, Vincent Palmer, regarding Spies's activities, and thereafter informed Gilmore that plaintiff, who was living with Spies at the time, was involved in similar activities.  Upon learning of plaintiff's alleged internet activity, Graulich verbally counselled plaintiff to restrict her internet use while at work.  Subsequently, Employee Relations informed Gilmore that it would take the lead on investigating plaintiff's internet use during work and any possible communication of confidential information to the public.  In April, 2012, after its investigation, Employee Relations decided not to bring disciplinary action against plaintiff.

*Compressed Work Schedule*

At DEC, employees can apply for a compressed pay period schedule where they work longer hours on some days in order to be allowed to work nine days over a two week pay period. According to the DEC's website, "[i]t is the policy of the [DEC] to provide alternative work schedules when it is clearly demonstrated that such schedules will not impair the delivery of services to the public, will maintain and enhance productivity, will retain and attract the most talented individuals or will reduce absenteeism and/or tardiness without compromising management and supervision of Department programs."  (Pl.'s Ex. 20.)  The website also provides that "[e]stablishment of an alternative work schedule is at the discretion of the DEC and can be revoked by management at any time."  Moreover, the website states that "[s]ubject to

management approval, compressed pay period schedules are available to full time annual salaried DEC employees" when, *inter alia*, "[t]he employee's work performance is such that he/she has clearly demonstrated the ability to work independently and with minimum supervision."

According to defendants, in early 2012, Gilmore recommended that plaintiff's request for a compressed pay period schedule be denied in light of her inappropriate use of the internet at work, which at the time was still being reviewed by Employee Relations. Plaintiff, however, contends that plaintiff's request was never sent to the appropriate Albany office for approval. However, even though plaintiff's request was denied, her supervisor, Graulich, constructively allowed her a compressed pay schedule throughout 2012 by completing additional paperwork on a weekly basis to justify changing her work schedule for each week. In February, 2013, plaintiff's subsequent request for a compressed pay period schedule was approved.

*MRAC Meetings*

Marine Resources Advisory Council ("MRAC") was "established by law in 1987 to advise the DEC on marine resources issues, such as commercial and recreational fishing, proposed regulations and the protection and utilization of New York's valuable marine resources." (Defs.' R. 56.1 Stmt. ¶ 75.) MRAC meetings occur every two months at the Setauket office and last three hours. Defendants contend that Gilmore has repeatedly directed his entire office, orally or in writing, to only attend MRAC meetings when the topics being discussed relate specifically to an employee's duties, or if Gilmore personally directs a particular employee to attend. Plaintiff, however, sought to attend meetings unrelated to her duties and claims that Gilmore attempted to preclude her from attending these meetings. After discussions with Employee Relations, plaintiff was allowed to take her personal time to attend meetings not related to her specific duties.

*DISCUSSION*

## I. Applicable Law and Legal Standards

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts*," Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that

affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Id.* at 211 (quoting *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Bd. of Elections of the City of N. Y.*, 224 F.3d 149, 157 (2d Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d

989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id*. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

## II. Plaintiff's Discrimination Claim

### A. *Legal Standard*

In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting "formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-511 (1993). Under *McDonnell Douglas* and its progeny, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003). The burden of establishing a *prima facie* case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to

"articulate some legitimate, nondiscriminatory reason for [the adverse act]." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted). The employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and thus, "[e]vidence that an employer made a poor business judgment . . . generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

Should the employer satisfy its burden, the *McDonnell Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non." See *Reeves*, 530 U.S. at 143. To rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998. Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

Finally, "the standards for proving discrimination under Section 296 of the New York Executive Law are the same as under Title VII." *Lucas v. South Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 146 (E.D.N.Y. 2008) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461,

479 (1982); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (plaintiff's claim under New York's Human Rights Law "is governed by the same standards as his federal claim")). "[A]ccordingly, the New York Executive Law inquiry is subsumed within the Title VII analysis." *Id.*

### B. *Application to Plaintiff's Discrimination Claim*

As described above, the Court begins its analysis by determining whether the plaintiff has made out a *prima facie* case. Defendants do not contest that the plaintiff, who is a woman, is a member of a protected group or that plaintiff suffered adverse employment actions when she was not promoted to Biologist 2. Defendants, however, dispute that plaintiff was qualified for the Biologist 2 positions she applied for and that "her not being selected for these two promotions 'occurred under circumstances giving rise to an inference of discrimination.' " (Defs.' Mem. in Supp. at 6.) The Court will address each of these arguments in turn.

*Plaintiff's Qualifications*

In order to make out a *prima facie* case that plaintiff is qualified, "all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 92 (2001). As the Second Circuit cautions, "[t]he qualification prong must not . . . be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove in his *prima facie* case, the employer's proffer of a legitimate, non-discriminatory basis for its decision." *Id.* Still, "there will also be circumstances in which a plaintiff's performance is so manifestly poor as to render her unqualified for continued employment and thereby defeat her *prima facie* case." *Gregory v. Daly*, 243 F.3d 687, 697 n. 7 (2d Cir. 2001) (citing *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997)).

In order to demonstrate that plaintiff was not qualified for the Biologist 2 (Marine) position, defendants point out that "Maniscalco received a much higher total score [using the point matrix] than any of the other candidates," including plaintiff. (Defs.' Mem. in Supp. at 7.) Moreover, with respect to the Biologist 2 (Ecology) position, defendants point out that the supplemental justification letter sent to Abadia noted plaintiff's past resistance and opposition to reform efforts in the TW Program. Additionally, defendants note that the candidates who were ultimately chosen for the positions held Master's of Science degrees, while plaintiff did not. While these facts may explain defendants' position that plaintiff was not the preferred candidate, they do not support that plaintiff was unqualified such that she did not possess a basic eligibility for the positions. Moreover, plaintiff points out that she was on the eligibility list for both positions and that Heins, who interviewed plaintiff for the Biology 2 (Marine) position testified that plaintiff was qualified for that position. (Pl.'s Ex. 10, Heins Dep. at 77.) Accordingly, a genuine question of fact exists as to whether plaintiff was qualified for the Biology 2 positions.

*Inference of Discrimination*

Plaintiff argues that she "easily meets this prong because she is a woman, who was qualified for the [Biology 2 positions she applied for], which went to [men]." (Pl.'s Mem. in Opp'n at 10.) As plaintiff points out, "[g]enerally, a plaintiff can establish the fourth prong of the *prima facie* case where the position sought was given to a person outside the plaintiff's protected class." *Separ v. Nassau Cty. Dep't of Social Servs.*, 2014 WL 4437676, at *5 (E.D.N.Y. Sept. 9, 2014) (citing *De la Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996). Therefore, whereas here, the positions that plaintiff applied for were given to men outside of plaintiff's protected class, plaintiff has sufficiently raised a genuine question of fact as to the inference of

discrimination prong.

*Pretext*

Since plaintiff has satisfied her burden of establishing a *prima facie* case, this Court will shift the burden to the employer to offer a legitimate, non-discriminatory reason for its actions. *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("Once the plaintiff satisfies his initial minimal burden, the burden of production shifts to the employer") (internal quotation marks omitted). Here, defendants' proffered reason for choosing not to promote plaintiff is, in general, that the individuals who received the promotions were more qualified for the positions than plaintiff who, *inter alia*, lacked a Master's of Science degree and scored lower than other candidates on an interview point matrix. Next, the Court must examine whether plaintiff has raised sufficient evidence of pretext.

### The Biology 2 (Marine) Position

Plaintiff argues that "Defendants' proffered justifications for not promoting Plaintiff to the Marine Position . . . are pretextual because (1) they are based on subjective standards and (2) lack credibility." (Pl.'s Sur-reply at 4.)

With respect to plaintiff's first argument, she takes issue with defendants' position that she was denied the promotion because she scored lower on the point matrix used during the interview. Plaintiff argues that because "the matrix criteria [were] *themselves* subjective, it is not a valid justification." (Pl.'s Sur-reply at 5.) Plaintiff relies primarily on *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 319-20 (3d Cir. 2000), where defendants justified plaintiff's denial of a position with her poor scores in administrative and organizational skills on a scoring matrix. The court noted that "[m]atrix criteria and their

13

weighting are themselves highly subjective even though they are given an apparently objective numerical ranking." *Goosby*, 228 F.3d at 320.  However, in that case, plaintiff specifically argued that "other employees with poor scores for administrative and organizational ability were nevertheless awarded the 'preferable' positions purportedly denied [plaintiff] because of those weaknesses." *Id*.  And the court specifically stated that "[t]hat allegation, if proven, would support a finding of discrimination despite her administrative weaknesses." *Id*.  Plaintiff does not make a similar argument regarding other employees here.  To the contrary, it is undisputed that the candidate who was chosen for the position scored higher than plaintiff on the point matrix.  Plaintiff's discussion of the subjectivity of the matrix without more is insufficient to raise evidence that defendants' actions were a pretext for discrimination.

Moreover, plaintiff's assertion that there are inconsistencies between defendants' justification letter and the defendants' argued reasons for denying her a Biology 2 (Marine) promotion is unfounded.  Particularly, plaintiff takes issue with the fact that her lack of a master's degree and lack of management experience, which defendants now proffer as an explanation for denying her the promotion, were not mentioned in the justification sent to Abadia.  (Pl.'s Sur-reply at 6.)  The justification letter, however, does mention that Maniscalco's "qualifications, training, experience and attitude were far superior to [that of] the other candidates" and notes plaintiff's lack of management experience.  (Pl.'s Ex. 41.) This does not amount to an inconsistency evidencing discrimination, especially when compared with that found in *E.E.O.C. v. Ethan Allen, Inc.*, 44 F.3d 116 (2d Cir. 1994), the case upon which plaintiff relies.  In that case, the court found that defendant provided inconsistent explanations for its decision to terminate an employee when at trial it suggested

the termination was due to the employee's lack of qualifications, but in its initial investigation it asserted that the termination was due to a decrease in the duties of the employee's position. *Id*. at 120. Unlike in that case, here defendants' proffered explanations are not inconsistent as they all relate to plaintiff's qualifications and suitability for the position.

Additionally, plaintiff attempts to challenge the credibility of the justification letter by pointing to Gilmore's admission at his deposition that he did not review plaintiff's positive employment evaluations prior to writing the letter; however, as plaintiff also notes, Gilmore testified that he did not do so because he assumed her evaluations were satisfactory since they had not been brought to his attention previously. (Pl.'s Ex. 3 at 198.) Based on that testimony, it is not clear how Gilmore's failure to consider the performance evaluations could be construed as evidence of discrimination.

### The Biology 2 (Ecology) Position

Plaintiff also argues that defendants' reasons for not promoting plaintiff to the Biology 2 (Ecology) position "are pretextual because (1) they are inconsistent and (2) lack credibility." (Pl.'s Sur-Reply at 7.)

As with the Biology 2 (Marine) position, plaintiff has not pointed to any inconsistencies that suggest the defendants' decision not to promote the plaintiff was a pretext for discrimination. For example, plaintiff attempts to manufacture an inconsistency between defendants' treatment of plaintiff's graduate work and Walker's master's degree. She points to the December 30th justification letter stating that plaintiff's "graduate work in Biology and Education offer little additional value as most of the biological coursework will be no more advanced than what was already taken at the undergraduate level," (Pl.'s Ex. 51), and

compares that to defendants' assertion that Walker's Master's of Science degree was "very relevant" to his selection. (Defs.' Reply at 7.) However, these two statements are not inconsistent. It is undisputed that unlike Walker plaintiff did not obtain a Master's degree, and the statement regarding her coursework in the justification letter merely suggests that her particular coursework was not considered valuable for the position, not that all Master's degrees are invaluable. Therefore, defendants were not inconsistent in assigning little value to plaintiff's graduate coursework while considering Walker's Master's of Science degree highly relevant.

Moreover, plaintiff attempts to raise evidence of pretext by arguing that Scully's supplemental justification letter contained false information. Plaintiff argues that Scully's statement at his deposition that the letter contained secondhand information and the fact that he did not document his observation of plaintiff's purported oppositional behavior at the January 19, 2009 meeting cast doubt upon Scully's credibility and the truth of the supplemental justification. These facts, however, are not sufficient to raise a genuine question regarding whether the defendants' justification was a pretext for discrimination as they do not demonstrate that defendants' reasons for termination were "a guise for a discriminatory motive." *Forte v. Liquidnet Holdings, Inc.*, 2015 WL 5820976, at *11 (S.D.N.Y. Sept. 30, 2015) (citing *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 142 (2d Cir. 1993) ("[I]t is important to emphasize that a Title VII plaintiff does not necessarily meet its burden of persuasion by convincing the factfinder that the employer's non-discriminatory explanation is not credible; rather, the trier of fact must find that the plaintiff has proven its explanation of discriminatory intent . . . .")).

**Gender Stereotypes**

Finally, plaintiff argues that "Defendants' attempts to dismiss Plaintiff's sex claims should also be rejected since they have not conclusively shown that stereotyping did not affect the promotional process." (Pl.'s Sur-reply at 9.) Specifically, plaintiff argues that defendants "unlawfully made stereotypical assumptions about [plaintiff's] 'interpersonal skills' " and that their descriptions of plaintiff evidence defendants' disfavor of assertiveness in female candidates. (Pl.'s Opp'n at 11.) For example, plaintiff notes Gilmore's description of plaintiff in the justification letter for the Marine position as "impulsive" and someone who "will challenge a decision" as well as Scully's discussion in the supplemental justification of plaintiff's opposition to implementation of reforms in the TW Program. (Pl.'s Opp'n at 12 ,14; Pl.'s Exs. 41, 55.) Plaintiff argues that these descriptions evidence a bias against plaintiff's assertiveness, which would not have been viewed negatively in a male candidate.

Plaintiff relies heavily on *Price Waterhouse v. Hopkins*, where the Supreme Court recognized that "sex stereotyping" that occurs when "an employer . . . acts on the basis of a belief that a woman cannot be aggressive, or that she must not be," could be a basis for gender discrimination. 490 U.S. 228, 250 (1989). In that case, "[t]here were clear signs . . . that [the employer] reacted negatively to [plaintiff's] personality because she was a woman." *Id*. at 235. For example, a partner at the employer firm suggested that "in order to improve [plaintiff's] chances for partnership . . . [she] should 'walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry.' " *Id*. Similarly, in *Sassaman v. Gamache*, another case on which plaintiff relies, the employer made explicit reference to plaintiff's gender, telling plaintiff in connection with his conduct toward another employee "you probably did what she said you did because you're a male and nobody would believe you anyway." 566 F.3d 307, 311 (2d Cir. 2009). Plaintiff has not

pointed to any comments here of such explicit stereotyping, and admits as much. Nor is this case similar to other cases cited by plaintiff where such explicit reference to gender was not required to withstand summary judgment, but where there was evidence that defendants had referenced the plaintiff's child care duties. Those cases "stand for the proposition that unlawful sex discrimination occurs when an employer takes an adverse job action on the assumption that a woman, because she is a woman, will neglect her job responsibilities in favor of her presumed childcare responsibilities." *Chadwick v. Wellpoint, Inc.*, 561 F.3d 38, 44-45 (1st Cir. 2009); *Lust v. Sealy*, 383 F.3d 580, 583 (7th Cir. 2004). Unlike in those cases, here plaintiff does not allege any discrimination based on an assumption that she would neglect her job in favor of child care responsibilities. As a result, plaintiff's discrimination claim is dismissed.

## III. Plaintiff's Retaliation Claim

### A. *Legal Standard*

"Section 704(a) of Title VII makes it unlawful to retaliate against an employee, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003). "In order to present a prima facie case of retaliation under Title VII . . . a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII, . . . [2] that the employer was aware of this activity," and "[3] that the employer took adverse action against the plaintiff." *Kessler v. Westchester Cty. Dep't of Social Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (internal quotation omitted). In addition, the Supreme Court recently clarified

the causation standard required by § 704(a) stating, "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," as distinct from "a motivating factor," which had previously been the standard in the Second Circuit. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013); *Kessler*, 461 F.3d at 206.

Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*. *See Terry*, 336 F.3d at 141. Once the employee has established a *prima facie* case, the employer "must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the [employee] to demonstrate pretext." *Slattery*, 248 F.3d at 94-95.

### B. *Application to Plaintiff's Retaliation Claim*

Plaintiff claims that as a result of filing an Equal Employment Opportunity Commission ("EEOC") complaint on August 22, 2011, she was retaliated against because Gilmore investigated her internet usage at work, attempted to include a negative comment in her performance evaluation related to her internet usage, attempted to preclude her from attending MRAC meetings, and denied her an alternative work schedule. (Pl.'s Mem. in Opp'n at 22; Pl.'s Sur-reply at 14.)

Defendants argue that the investigation into plaintiff's internet use, denial of the compressed work schedule, and restriction of attending MRAC meetings do not constitute adverse employment actions. What qualifies as an adverse employment action in the context of a claim of retaliation is much broader than a claim of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The scope of the antiretaliation provision extends beyond work-place-related or employment-related retaliatory acts and

harm."); *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (concluding that "[p]rior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment no longer represent the state of the law") (internal citations omitted). The applicable test in the retaliation context is that a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (internal quotation marks omitted).

Here, the Court need not analyze whether the challenged actions meet that standard because even assuming they do, plaintiff has failed to offer sufficient evidence of retaliatory intent. She argues that "many of the adverse actions complained of, such as the investigation occurred within months – even weeks – of Plaintiff filing the Charge," and that "[t]his close temporal proximity sufficiently establishes proximate causation." However, even if this were sufficient to satisfy plaintiff's *prima facie* burden, the mere fact that a plaintiff's alleged adverse actions may have taken place in close temporal proximity to the protected activity is not sufficient evidence of pretext. *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.")

Moreover, plaintiff has failed to identify any further evidence of pretext. Plaintiff in her declaration claims that Graulich told her that Gilmore had commented to Graulich that "the filing of [plaintiff's] EEOC charge would adversely affect [her] future chances of

promotion" and that he could not understand why she was "going against the agency." (Pl.'s Ex. 25, ¶ 35.) However, there is no evidence that plaintiff applied for any promotions after filing the charge, nor does plaintiff argue that her EEOC charge lead to a failed promotion. With respect to the adverse actions that plaintiff does assert resulted from the EEOC charge, plaintiff fails to raise evidence that defendants' proffered reasons for those actions were a pretext for retaliation.

First, regarding defendants' investigation into plaintiff's internet use, defendants maintain that the investigation was warranted given that plaintiff had posted inappropriate blogs discussing confidential DEC information and opposing BMR management decisions. Additionally, defendants point out that the investigation could not have been in retaliation for plaintiff's filing an EEOC charge because it began prior to plaintiff's filing of that charge. Plaintiff attempts to refute this assertion by suggesting that Gilmore began a renewed investigation after becoming aware of plaintiff's filing the EEOC charge, and this "continued discipline" is strong evidence of pretext." (Pl.'s Sur-reply at 12.) However, none of the evidence plaintiff cites demonstrates that any further discipline of plaintiff took place, only that Gilmore "attempted to have [Graulich] discipline her several times," and it is unclear exactly when these attempts occurred. (Pl.'s Ex. 6, Graulich Dep. at 82.) Accordingly, unlike in the sole case plaintiff relies upon for this argument, *Terry v. Ashcroft*, 336 F.3d 128, 145 (2d Cir. 2003), where the plaintiff, a special agent, experienced continued vehicle suspension after filing an EEO complaint, plaintiff has not pointed to any evidence that she actually experienced further discipline.

With respect to Gilmore's alleged attempt to include a statement in plaintiff's 2012-2013 performance evaluation regarding her internet use, defendants argue that "it was entirely

appropriate for management to remind Plaintiff in her 2012-2013 performance program of the importance of adhering to the Internet Acceptable Use Policy," (Defs.' Reply at 15), while plaintiff argues that Gilmore's attempt to include this comment was against DEC policy. Plaintiff, however, has not provided any evidence that it was against such policy – only an email from another employee to Gilmore stating that inclusion of the comment was "not appropriate" without any mention of why or discussion of DEC policy. (Pl.'s Ex. 71.) This is unlike the situation in *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998), the only case upon which plaintiff relies, where the court found that defendant's inconsistent application of its disciplinary policy was sufficient for the jury to have found pretext. Unlike in that case, here, plaintiff has not presented any evidence that Gilmore's attempt to include the comment was a result of inconsistent disciplinary actions with regard to employees.

Regarding plaintiff's attendance at MRAC meetings, defendants proffer that the restriction on plaintiff's attendance was pursuant to a policy that Gilmore put in place in 2009 directing the entire office to only attend meetings relating to an employee's job duties or if directed to do so by a supervisor. Plaintiff's attempt to cast doubt upon this explanation by arguing that defendants applied this policy disparately to plaintiff fails. In order to show disparate treatment, plaintiff must raise evidence of defendants' treatment of similarly situated employees outside the plaintiff's protected class who engaged in similar conduct. *Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 20-21 (2d Cir. 2013). Here, however, plaintiff has provided only a list of names of people whom she claims were allowed to attend meetings, but does not provide any information about the job functions or conduct of such individuals, for example, whether they received permission to attend. (Pl.'s Ex. 25, ¶ 39.) Moreover, while plaintiff argues that defendants actually instituted the policy not in 2009, but

in close temporal proximity to plaintiff's filing of her EEOC charge, or if it was in place since 2009 only began enforcing it against her after the filing, as discussed above, temporal proximity alone is not sufficient to establish pretext.

Finally, defendants argue that plaintiff was denied her request for a compressed work schedule due "to Plaintiff's prior inappropriate use of the internet during work hours and whether she could work independently without supervision." (Defs.' Reply at 17.) Plaintiff, however, challenges the credibility of this statement by pointing out that at the time of the denial, Graulich had already "dealt with" plaintiff's internet usage and the Office of Employee Relations had already determined not to take any action against the plaintiff. (Pl.'s Sur-reply at 14.) The Court is not persuaded, however, that even if plaintiff's internet usage had been "dealt with," that fact casts doubt upon defendants' credibility such that pretext can be inferred, especially where according to DEC policy whether to grant an alternative work schedule is in the discretion of the plaintiff's supervisors. Moreover, plaintiff "has failed to adduce evidence demonstrating that Defendants' reason [for the denial] [was] a guise for a [retaliatory] motive." *Forte* 2015 WL 5820976 at *11. As a result, plaintiff's retaliation claims fail. Given that all of plaintiff's claims are dismissed, the Court need not address defendants' argument that they are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment pursuant to Rule 56 is granted in its entirety. Plaintiff's claims under 42 U.S.C. § 2000(e) et. seq. (Title VII), and New York's Human Rights Law, Executive Law § 296 are dismissed.

**SO ORDERED.**

Dated: Central Islip, New York

July 29, 2016

_____/s/_____

Denis R. Hurley
United States District Judge